381 F.3d 281
Richard HACKETTv.James PRICE, Superintendent of SCI Greene; the District Attorney of Philadelphia County; the Attorney General of the State of Pennsylvania James S. Price, Superintendent of the State Correctional Institution, Greene County; The District Attorney of Philadelphia County; Michael Fisher, Attorney General of Pennsylvania, Appellants.
No. 01-9008.
United States Court of Appeals, Third Circuit.
Argued July 8, 2002.
Filed August 26, 2004.

Appeal from the United States District Court for the Eastern District of Pennsylvania, John R. Padova, J. COPYRIGHT MATERIAL OMITTED David Curtis Glebe (Argued), Assistant District Attorney, Thomas W. Dolgenos, Chief, Federal Litigation, Ronald Eisenberg, Deputy District Attorney, Law Division, Arnold H. Gordon, First Assistant District Attorney, Lynne Abraham, District Attorney, Office of District Attorney, Philadelphia, PA, for Appellants.
Norris E. Gelman, (Argued), Philadelphia, PA, for Appellee.
Before BECKER, Chief Judge,* AMBRO and GREENBERG, Circuit Judges.
AMBRO, Circuit Judge.

1
Richard Hackett was convicted by a Pennsylvania jury of murder in the first degree and sentenced to death. His direct appeals and post-conviction claims in state court were unsuccessful. Hackett then filed in federal court a petition for a writ of habeas corpus, which the District Court granted after determining there is a reasonable likelihood the jury interpreted the trial court's instructions and verdict form to preclude it from considering mitigating evidence in violation of the Eighth Amendment. The Commonwealth has appealed, and we reverse. The jury found unanimously that no mitigating circumstance exists. Because of that finding, we conclude that Hackett fails to show a reasonable likelihood that the jurors, individually or collectively, applied the challenged instruction and verdict form in a way that prevented the consideration of constitutionally relevant evidence.1

I. Facts & Procedural History

2
As did the District Court, we recite only briefly the facts of this case as set forth by the Pennsylvania Supreme Court. See Hackett v. Price, 212 F.Supp.2d 382, 386 (E.D.Pa.2001) (Hackett) (citing Commonwealth v. Hackett, 534 Pa. 210, 627 A.2d 719 (Pa.1993)). Hackett and a friend, Marvin Spence, conspired to kill Gregory Ogrod. Hackett lived in Ogrod's house, though their living situation had become hostile. Spence and Ogrod were partners in the sale of illegal drugs, but their business relationship deteriorated after Spence stole money that Ogrod had given him to purchase drugs for resale. On July 31, 1986, at 3:30 a.m., three men armed with knives and a crowbar entered the basement of Ogrod's home, where he and his girlfriend, Maureen Dunne, were sleeping. The assailants repeatedly struck the couple. Dunne, stabbed through the heart, was killed. Ogrod managed to resist, and the attackers fled. Testimony at trial established the assailants as Hackett, Spence, James Gray, and Keith Barrett. Id.

3
Hackett was charged with murder in the first degree, criminal conspiracy, possession of instruments of crime, and aggravated assault. In 1988 he was tried jointly with Spence, Gray, and Barrett in the Court of Common Pleas of Philadelphia County. All four defendants were convicted of first degree murder. Id.; see also Commonwealth v. Spence, 534 Pa. 233, 627 A.2d 1176 (1993); Commonwealth v. Gray, 415 Pa.Super. 77, 608 A.2d 534 (1992).

Pennsylvania law requires that

4
[b]efore the jury retires to consider the sentencing verdict, the court shall instruct the jury ... [that] the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

5
42 Pa. Cons.Stat. Ann. § 9711(c)(1)(iv). At the capital sentencing hearing the Commonwealth argued two aggravating circumstances: Hackett conspired to pay another person to kill the victim, and he created a grave risk to another during the murder of the victim. Commonwealth v. Hackett, 627 A.2d at 723 (citing 42 Pa. Cons.Stat. Ann. §§ 9711(d)(2), (7)). Hackett offered countervailing evidence of mitigating circumstances—including a history of learning and social disabilities, a low level of maturity, signs of depression and suicidal problems, limited interpersonal resources, and alcohol abuse. See Hackett, 212 F.Supp.2d at 407 n. 20; see also 42 Pa. Cons.Stat. Ann. §§ 9711(e)(1)-(8) (listing statutory mitigating circumstances).

6
The jury sentenced Hackett to death, finding both of the aggravating circumstances argued by the Commonwealth and no mitigating circumstance. Spence also was sentenced to death, the jury in his case finding aggravating circumstances that outweighed any mitigating circumstance.2 Gray and Barrett were sentenced to life imprisonment.3

7
On direct appeal, the Pennsylvania Supreme Court affirmed Hackett's conviction and sentence. Commonwealth v. Hackett, 627 A.2d at 721. The Court rejected, inter alia, his argument "that the trial court erred in its charge to the jury during the penalty phase by failing to instruct the jury they need not be unanimous in finding mitigating circumstances in accord with Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)." Id. at 725.

8
Hackett next filed a petition for relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. Cons.Stat. Ann. § 9541 et seq. The Court of Common Pleas denied Hackett's petition for relief and the Pennsylvania Supreme Court affirmed. Commonwealth v. Hackett, 558 Pa. 78, 735 A.2d 688 (1999). The United States Supreme Court denied certiorari. Hackett v. Pennsylvania, 528 U.S. 1163, 120 S.Ct. 1178, 145 L.Ed.2d 1086 (2000).

9
Hackett then petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. Hackett, 212 F.Supp.2d at 385. He challenged the guilt and sentencing phases of his trial on six grounds. The District Court denied five of these claims, but concluded that Hackett's allegations of Mills error entitled him to relief. The District Court "determine[d] that the state court's failure to apply the legal standard from Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), in adjudicating [Hackett's] Mills claim was contrary to clearly established federal law as determined by Supreme Court of the United States." Id. at 400. The District Court "further conclude[d] on plenary review that the instructions and verdict form created a reasonable likelihood that the jury understood the instructions in such a way that it was improperly prevented from considering mitigating evidence." Id. Hackett's sentence was vacated without prejudice to the Commonwealth to sentence him to life imprisonment or to conduct such further proceedings as may be appropriate under Pennsylvania law, including a new sentencing hearing, within 180 days. Id. at 413. The Commonwealth appealed, and the District Court's ruling on Hackett's Mills claim is the sole issue before us. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

II. Standard of Review

10
Congress in 1996 passed the Antiterrorism and Effective Death Penalty Act (AEDPA), which "altered the standard of review that a federal habeas court must apply to a state prisoner's claim that was adjudicated on the merits in state court." Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 368 (3d Cir.2002) (citing Williams v. Taylor, 529 U.S. 362, 402-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (interpreting 28 U.S.C. § 2254(d)(1)). See also Dunn v. Colleran, 247 F.3d 450, 456-57 (3d Cir.2001) (explaining Williams). More specifically, AEDPA "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." Dunn, 247 F.3d at 456-57 (quoting Williams, 529 U.S. at 399, 120 S.Ct. 1495)). Because Hackett filed his habeas petition after AEDPA became effective, we follow Congress' directive and give greater deference to state courts' factual findings and legal determinations. See id. at 457. According to the relevant provision of AEDPA:

11
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

12
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States....

13
28 U.S.C. § 2254(d)(1).

14
Prior decisions of our Court explain thoroughly the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1). For instance, in Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir.2000), we noted that Justice O'Connor delivered the opinion of the Supreme Court in Williams as to AEDPA's amended standard of review and described the operation of both clauses as follows:

15
Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

16
(quoting Williams, 529 U.S. at 412-13, 120 S.Ct. 1495). Werts further noted that, per Williams, the appropriate inquiry under the "unreasonable application of" standard was "whether the state court's application of clearly established federal law was objectively unreasonable." 228 F.3d at 196 (quoting 529 U.S. at 409, 120 S.Ct. 1495). An unreasonable application of federal law involves more than merely an incorrect or erroneous application of federal law: "[A] federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Id. (citing Williams, 529 U.S. at 411, 120 S.Ct. 1495).

17
Werts also noted that, one year prior to Williams, an en banc decision of our Court, Matteo v. Superintendent, SCI Albion, 171 F.3d 877 (3d Cir.1999), had construed the procedure for applying § 2254(d)(1)'s standard of review: First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." O'Brien [v. Dubois], 145 F.3d [16, 24-25 (1st Cir.1998)]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application of" Supreme Court precedent: that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified. If so, then the petition should be granted.

18
Werts, 228 F.3d at 196-97 (quoting Matteo, 171 F.3d at 891). We further stated our belief that Matteo was in accord with the Supreme Court's subsequent decision in Williams, as both opinions make the distinction "that the `contrary to' and `unreasonable application of' clauses should be accorded independent meaning." Id. at 197 (quoting Williams, 529 U.S. at 405, 120 S.Ct. 1495).

19
In summary, our review under AEDPA is to proceed as follows. "[W]e must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." Id. (citing Matteo, 171 F.3d at 888). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Id. (quoting Matteo, 171 F.3d at 888). "If we determine that the state court decision is not `contrary to' the applicable Supreme Court precedent, then we are required to advance to the second step in the analysis—whether the state court decision was based on an `unreasonable application of' Supreme Court precedent." Id. (citing Matteo, 171 F.3d at 888). In performing this inquiry, "we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." Id. (citing Matteo, 171 F.3d at 889). Rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable," i.e., "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. (quoting Matteo, 171 F.3d at 890); see also Price v. Vincent, 538 U.S. 634, 636, 643, 123 S.Ct. 1848, 155 L.Ed.2d 877 (2003) (unanimously reversing a decision to grant habeas relief as "exceed[ing] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)" because "[e]ven if we agreed with the Court of Appeals that the Double Jeopardy Clause should be read to prevent continued prosecution of a defendant under these circumstances, it was at least reasonable for the state court to conclude otherwise.").

III. Discussion

20
The District Court in this case concluded that the Pennsylvania Supreme Court's decision rejecting Hackett's Mills claim was "contrary to" clearly established federal law, and thus determined that it (the District Court) was "not constrained by the deferential standard of [AEDPA's] section 2254(d)(1)." 212 F.Supp.2d at 406. We exercise plenary review over this legal conclusion, Stevens, 295 F.3d at 368, and disagree with the District Court that AEDPA deference does not apply to Hackett's petition. Before explaining our reasons for so concluding, however, we first— as instructed by Williams—identify and discuss the applicable Supreme Court precedent.

21
A. The Supreme Court Standard: Mills, McKoy & Boyde

1. Mills

22
We begin with Mills v. Maryland, 486 U.S. 367, 384, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), where the Supreme Court vacated a death sentence after concluding there was a "substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." The potential for such an outcome violated the well-established rule that the sentencer in a capital case must be permitted to consider (and, conversely, must not be precluded from considering) all mitigating evidence offered by a defendant in arguing for a sentence less than death. Id. at 374, 108 S.Ct. 1860 (citing Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)).

23
The Maryland sentencing scheme at issue in Mills worked in the following manner, depending on the jury's findings of aggravating and mitigating circumstances. The jury first was instructed to determine whether it unanimously found one or more of the aggravating circumstances listed on the verdict form. If it did not, the defendant was sentenced to life imprisonment. If the jury did unanimously find one or more aggravating circumstance(s), it next was instructed to determine whether it unanimously found one or more of the mitigating circumstances listed on the verdict form. If it did not, the defendant was sentenced to death. If the jury unanimously found one or more mitigating circumstance(s), it next was instructed to determine whether it unanimously found that the mitigating circumstance(s) outweighed the aggravating circumstance(s). If the answer to this question was yes, the defendant was sentenced to life imprisonment. If the answer was no—i.e., the mitigating circumstance(s) did not outweigh the aggravating circumstance(s)—the defendant was sentenced to death. Id. at 384-89, 108 S.Ct. 1860.

24
The petitioner in Mills argued that the sentencing scheme was constitutionally infirm because "even if some or all of the jurors were to believe some mitigating circumstance or circumstances were present, unless they could unanimously agree on the existence of the same mitigating factor, the sentence necessarily would be death." Id. at 371, 108 S.Ct. 1860 (emphases in text). For example, if only eleven of twelve jurors agreed that one or more mitigating circumstance(s) existed—or if all twelve jurors agreed that one or more mitigating circumstance(s) existed, but did not agree as to the same circumstance(s)—individual jurors could not give any effect to that mitigating evidence at all, and the jury could not deliberate whether the mitigating circumstance(s) merited a sentence of life imprisonment instead of death. Id. at 373-74, 108 S.Ct. 1860.

25
Thus, the "critical question" in Mills was "whether petitioner's interpretation of the sentencing process is one a reasonable jury could have drawn from the instructions given by the trial judge and from the verdict form employed in this case." Id. at 375-76, 108 S.Ct. 1860 (emphasis added). The verdict form required the jury to mark either "yes" or "no" beside each of the listed mitigating circumstances. If the jury understood that every time it marked "no" beside a mitigating circumstance it was indicating it had unanimously concluded the petitioner had failed to prove that circumstance, then the death sentence was to be upheld, as each juror had considered and rejected all proffered mitigating evidence. But, on the other hand, if the jury believed it was to mark "no" if it could not unanimously agree whether the same mitigating evidence existed, even one holdout juror could prevent the other jurors from weighing mitigating evidence against aggravating evidence, and the death sentence could not stand. Id. at 376, 108 S.Ct. 1860. Concluded the Court:

26
[T]here is a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance. Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently require the jury to impose the death penalty, is one we dare not risk.

27
Id. at 384, 108 S.Ct. 1860 (emphases added).

2. McKoy

28
The Supreme Court revisited Mills two years later in McKoy v. North Carolina, 494 U.S. 433, 435, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), and held that the unanimity requirement in North Carolina's capital sentencing scheme—which "prevent[ed] the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find"—was unconstitutional because it prevented the sentencer from considering all mitigating evidence. McKoy repeated the rule in Mills that a death sentence cannot stand if the jury instructions and verdict form created a substantial probability that reasonable jurors thought they were precluded from considering mitigating evidence unless the jury unanimously agreed on the existence of that particular circumstance. Id. at 438, 110 S.Ct. 1227 (citing Mills, 486 U.S. at 384, 108 S.Ct. 1860). The Court also noted that Mills reasoned that allowing a holdout juror to preclude other jurors from considering mitigating evidence violated the principle that a sentencer may not be prevented from giving effect to all mitigating evidence. Id. (citing Mills, 486 U.S. at 375, 108 S.Ct. 1860).

29
The North Carolina Supreme Court attempted to distinguish Mills by concluding that—whereas Maryland's sentencing scheme required the jury to impose the death penalty if it found i) aggravating circumstances and no mitigating circumstances or ii) aggravating circumstances that outweighed any mitigating circumstances—the North Carolina procedure allowed the jury to recommend a sentence of life imprisonment even without a finding of mitigating circumstances. Id. (discussing the decision of the North Carolina Supreme Court). The United States Supreme Court, however, concluded that the purported distinction did not place the statute outside of the scope of Mills. The fact remained that the jury, even if it recommended a sentence of life imprisonment, was required to make its decision based only on circumstances it unanimously found. Id. at 439, 110 S.Ct. 1227. "The unanimity requirement thus allows one holdout juror to prevent the others from giving effect to evidence that they believe calls for a `sentence less than death.'" Id. (quoting Eddings, 455 U.S. at 110, 102 S.Ct. 869). In addition, even if all twelve jurors agreed that some mitigating circumstances were present, they could not give effect to that evidence without unanimity as to the same circumstance, precisely the violation found in Mills. Id. The Court noted that "[o]ur decision in Mills was not limited to cases in which the jury is required to impose the death penalty if it finds that aggravating circumstances outweigh mitigating circumstances or that no mitigating circumstances exist at all." Id. at 439-40, 110 S.Ct. 1227 (emphasis in text). "Rather, we held that it would be the `height of arbitrariness to allow or require the imposition of the death penalty' where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence." Id. at 440, 110 S.Ct. 1227 (quoting Mills, 486 U.S. at 374, 108 S.Ct. 1860) (emphasis in text).

3. Boyde

30
The same day it issued McKoy, the Supreme Court decided Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Boyde clarified the legal standard for jury instructions in death penalty cases asserted to be "ambiguous and therefore subject to an erroneous interpretation." Id. at 380, 110 S.Ct. 1190. The Court first noted that "[i]n assessing the effect of a challenged jury instruction, we follow the familiar rule ... `that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" Id. at 378, 110 S.Ct. 1190 (quoting Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The Court next recognized that "[t]he legal standard for reviewing jury instructions claimed to restrict impermissibly a jury's consideration of relevant evidence is less than clear from our cases." Id. For example, in Mills alone

31
we alluded to at least three different inquiries for evaluating such a challenge: whether reasonable jurors "could have" drawn an impermissible interpretation from the trial court's instructions; whether there is a "substantial possibility that the jury may have rested its verdict on the `improper' ground"; and how reasonable jurors "would have" applied and understood the instructions.

32
Id. at 379, 108 S.Ct. 1860 (internal citations omitted) (emphasis in text). The Court stated that "[a]lthough there may not be great differences among these various phrasings, it is important to settle upon a single formulation for this Court and other courts to employ in deciding this kind of federal question."4

33
Boyde thus held that the proper inquiry for reviewing a jury instruction that is ambiguous and therefore subject to erroneous interpretation "is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Id. at 380, 110 S.Ct. 1190. However, a defendant "need not establish that the jury was more likely than not5 to have been impermissibly inhibited by the instruction," though "a capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility of such an inhibition." Id. (emphasis added). The Court further explained its reasons for requiring a "reasonable likelihood" of jury confusion, rather than the various formulations in Mills:

34
This "reasonable likelihood" standard, we think, better accommodates the concerns of finality and accuracy than does a standard which makes the inquiry dependent on how a single hypothetical "reasonable" juror could or might have interpreted the instruction. There is, of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong policy against retrials years after the first trial where the claimed error amounts to no more than speculation. Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

Id. at 380-81, 110 S.Ct. 1190.6

35
* * * * * *

36
In sum, a petitioner's Mills claim alleging juror confusion as to unanimity must be examined under Boyde to determine whether there is a reasonable likelihood (as opposed to merely a possibility) that jurors have applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence.

37
B. Third Circuit Application: Zettlemoyer, Frey & Banks

38
Three times previously our Court has applied the Boyde standard of review to a Mills claim, with varying results. We review each below.

1. Zettlemoyer

39
In a 1991, pre-AEDPA decision, Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.1991), the petitioner argued the following trial court instruction erroneously suggested that the jury's finding on mitigating circumstances must be unanimous:

40
The verdict, of course, must be unanimous. Again, if you find unanimously, beyond a reasonable doubt, the aggravating circumstance that I have mentioned, the only one that's applicable, that the victim was a prosecution witness to a felony and it was committed and he was murdered so that he would not testify, that is an aggravating circumstance. If you find that aggravating circumstance and find no mitigating circumstances or if you find that the aggravating circumstance which I mentioned to you outweighs any mitigating circumstance you find, your verdict must be the death penalty. If, on the other hand, you find that the Commonwealth has not proven an aggravating circumstance beyond a reasonable doubt or if they have, that the mitigating circumstances outweight [sic] the aggravating circumstances, then you must bring in a verdict of life imprisonment.

41
. . . .

42
. . . Under the law, as I said, you are obligated by your oath of office to fix the penalty at death if you unanimously agree and find beyond a reasonable doubt that there is an aggravating circumstances (sic) and either no mitigating circumstance or that the aggravating circumstance outweighs any mitigating circumstances.

43
Id. at 307-08. In addition, the jury completed the following verdict form:

44
1. We the jury unanimously sentence the defendant to: _[X]_ death ___ life imprisonment.

45
2. (To be used in the sentence if death) We the jury have found unanimously:

46
___ at least one aggravating circumstance and no mitigating circumstance.

47
The aggravating circumstance is ___.

48
_[X]_ the aggravating circumstance outweighs [the] mitigating circumstances. The aggravating circumstance is [the murdering of a prosecution witness to prevent testimony in a felony case.]

49
Id. at 308.

50
We concluded that the petitioner had "failed to show that there is a reasonable likelihood that the jury applied these instructions in a way that precluded its consideration of any relevant mitigating evidence." Id. First, the instructions were not defective. The jury was not directed that it must find unanimously the existence of a particular mitigating circumstance or told that it could weigh only those mitigating circumstances which it found unanimously, distinguishing that case from Mills. Also, the trial court correctly instructed the jury that its verdict must be unanimous, but this instruction did not preclude the jury from considering relevant evidence in deliberating in anticipation of the verdict. Id. Second, the verdict form likewise was permissible. The language explicitly required unanimity as to aggravating circumstances. The absence of a similar instruction as to mitigating circumstances indicated that unanimity was not required. To focus the jury, it was required to identify the aggravating circumstance it had found, but was not similarly required to do so as to mitigating circumstances, suggesting to the jury that it had broad and unrestricted discretion to consider mitigating circumstances. Id. Finally, while the trial court instructed the jury that its ultimate conclusion (as to the defendant's sentence) must be unanimous, this did not indicate to the jury that each step in its deliberative process also required unanimity. Id.

2. Frey

51
Next, in Frey v. Fulcomer, 132 F.3d 916 (3d Cir.1997)—like Zettlemoyer, also involving a habeas petition filed before AEDPA became effective—we again considered a Mills challenge to a similar jury instruction. The trial court in Frey charged:

52
Members of the jury, you must now decide whether this defendant should be sentenced to death or life imprisonment. The sentence will depend upon your findings concerning aggravating and mitigating circumstances. The Crimes Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

53
. . .

54
Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstances (sic) and no mitigating circumstances, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment.

55
Id. at 922.

56
Frey determined it was reasonably likely that the jury could have understood this charge to require unanimity in the consideration of mitigating evidence.7 "First and foremost, read in its entirety, the relevant portion of the jury charge emphasizes the importance of a unanimous finding, using the phrase frequently and in close proximity to—within seven words—the mitigating circumstances clause." Id. at 923. The Court found particularly relevant the clause "if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance...." Id. "Considering this close proximity—the clause is, to the ear and to the mind, one sound bite—it is quite possible that a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously." Id.

57
Moreover, the Court noted that its conclusion in Frey was not inconsistent with its holding in Zettlemoyer. The separation in Zettlemoyer between the clauses emphasizing unanimity and mitigating circumstances was seventeen words, "not one sound bite." Id. Also, the Zettlemoyer trial court had "used the term `unanimously' to modify only the term `agree' in the subsequent phrase `agree and find.'" Id. The Frey trial court "did not instruct the jury to `fix the penalty at death if you unanimously agree and find...,' but rather instructed them to so fix that sentence `if the jury unanimously finds.'" Id. (emphases in text). Thus, "the unanimity language in the Frey charge could only modify the term `find,' and hence the jury could reasonably have believed that unanimity was required in both its ultimate and interim conclusions, especially given the close proximity we have described." Id. (emphasis added). Finally, unlike in Zettlemoyer, the Frey trial court "did not stress that the different burdens that attach to aggravating and mitigating circumstances also entail different unanimity requirements," meaning a lay jury plausibly may have concluded that the same unanimity requirements extended to both. Id. at 924. For these reasons, the Court found that "it was reasonably likely that the jury could have believed that it was required to find the existence of mitigating circumstances unanimously before those circumstances could be considered in its deliberations," id. (emphasis added), and that the charge therefore violated Mills.8

3. Banks

58
Lastly, we recently analyzed a Mills claim under the more stringent AEDPA standard of review in Banks v. Horn, 271 F.3d 527 (3d Cir.) (Banks I), rev'd in part, 536 U.S. 266, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) (Banks II), aff'd on reh'g, 316 F.3d 228 (3d Cir.2003) (Banks III), rev'd in part sub nom., Beard v. Banks, 124 S.Ct. 2504, 2004 WL 1402567 (June 24, 2004) (Banks IV).9 The Banks I Court phrased the question presented by the petitioner's Mills claim as "whether the Pennsylvania Supreme Court determination regarding the constitutionality of the instructions, verdict slip, and polling of the jury involved an unreasonable application of Mills." 271 F.3d at 544.10 The Court answered this question in the affirmative, concluding that the Pennsylvania Supreme Court erred by ruling there was no Mills violation without applying the teachings of Mills, and by examining the state statute from which the instructions were derived instead of looking for potential confusion by jurors applying those instructions. Id. at 545.

59
The Banks trial court delivered to the jurors the following instructions:

60
Members of the jury, you must now decide whether the defendant in this case is to be sentenced to death or to life imprisonment on each of the Informations upon which you have returned a verdict of guilty of murder in the first degree.

61
The sentence you will impose will depend on your findings concerning aggravating and mitigating circumstances. The Crime [sic] Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.

62
Remember, under the law of this Commonwealth, your verdict must be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstance, or if you unanimously find one or more aggravating circumstances which then outweigh any mitigating circumstances.

63
In all other cases, your verdict would be life imprisonment.

64
Once again, the Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. The defendant has the burden of proving mitigating circumstances by a preponderance of the evidence.

65
If, after conscientious and thorough deliberations, you are unable to agree on your findings and your verdict, you should report that to me.

66
Id. at 546-47.

67
Banks I juxtaposed these jury instructions against those our Court found to be constitutionally defective in Frey. Because Frey was a pre-AEDPA decision, it did not control the holding in Banks I, but "nonetheless our reasoning there regarding the Mills implications of a very similar jury charge is instructive and applicable." Id. at 544, 547. After quoting extended portions of Frey, Banks I concluded that "[t]hese same concerns dictate the same result here." Id. at 548. Our Court determined that the jury instructions in Banks, like those in Frey, violated Mills, and the Pennsylvania Supreme Court's examination (and approval) of the instruction was therefore an unreasonable application of Mills. Most significantly, the instructions were ambiguous as to whether unanimity was required to consider mitigating evidence, and the trial court's explanation of the distinctions between the burdens of proof for aggravating and mitigating circumstances also failed to clarify the distinctions between the unanimity requirement for either set of circumstances. Id. at 548-49.

68
Banks I next reviewed the verdict slip and concluded that it also suggested to the jury a unanimity requirement as to mitigating circumstances. This form, as completed by the jury, was as follows:

69
1. We the jury unanimously sentence the defendant in the above matter to

70
_X_ Death

71
____ Life Imprisonment

72
2. (To be completed if the Sentence is Death) We the jury have found unanimously

73
____ At least one aggravating circumstance and no mitigating circumstances. The aggravated circumstance(s)(is)(are):

74
1. ____ In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

75
2. ____ The defendant has a significant history of felony convictions involving the use or threat of violence to the person.

76
3. ____ The defendant has been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

77

Or

78
_X_ One or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.

The aggravating circumstance(s)(is)(are):

79
1. ____ In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

80
2. ____ The defendant has a significant history of felony convictions involving the use of [sic] threat of violence to the person.

81
3. _X_ The defendant has been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense.

The mitigating circumstance(s)(is)(are):

82
1. _X_ The defendant was under the influence of extreme mental or emotional disturbance.

83
2. ____ The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

84
3. ____ Any other mitigating matter concerning the character or record of the defendant or the circumstances of his offense.

85
Id. at 549-50.

86
Banks I found "it only reasonable to conclude that the form itself is at least confusing, and more likely suggestive, regarding the need for unanimity as to mitigating circumstances." Id. at 550. The statement that explains the jury's reasoning for imposing a sentence of death—"We the jury have found unanimously...." — implies that everything that follows was found unanimously, including "[o]ne or more aggravating circumstances which outweigh any mitigating circumstance or circumstances." Id. No additional language explains the distinctions between the unanimity requirements for aggravating and mitigating circumstances, and nowhere does the form instruct that the jury could infer that a mitigating circumstance might be marked if only one juror found that the circumstance existed. Id. For these reasons, the verdict slip also violated Mills, and "for the Pennsylvania Supreme Court to have ruled that there was no Mills violation without an examination of the content and implications of the verdict slip and without employing the proper inquiry was an unreasonable application of Mills."11 Id.

C. The Hackett Charge

87
Following the lead of Zettlemoyer, Frey, and Banks, we begin by setting out the trial court's instructions to the jury in Hackett's case:

88
The sentence will depend upon your findings concerning aggravating or mitigating circumstances. The Crimes Code provides that a verdict must be the sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstance [sic] which outweigh any mitigating circumstances that you may determine. The verdict must be a sentence of life imprisonment in all other cases.

89
The Crimes Code defines aggravating and mitigating circumstances. For the purposes confronting you at this time in this case, only the following matters, if proven, can constitute aggravating circumstances.

90
Now, ladies and gentlemen, I digress for a moment. Some of these may have no application, but I'm going to give them all to you. You will then have to make a determination as to whether, in your view, they apply or not.

91
[lists possible aggravating circumstances]

92
I am a bit repetitious. You may note, some of those don't have any application to this matter, but I'm giving them all to you. It is your determination to find as you must or not, as you see it, whether any of the things I've just read constitute aggravating circumstances, as it applies to this case and these defendants.

93
For the purpose or purposes of this case, the following matters, if proven, can constitute mitigating circumstances: [lists possible mitigating circumstances] Next. The Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt. As you will recall, I defined that term for you. The defendant has the burden of proving mitigating circumstances, but only by a preponderance of the evidence. This is a lesser burden of proof than beyond a reasonable doubt. A preponderance of the evidence exists where one side is more believable than the other side.

94
All the evidence from both sides, including the evidence you heard earlier during the trial in chief, as to aggravating or mitigating circumstances is important and proper for you to consider. You should not decide out of any feelings of vengeance or prejudice toward the defendants acting as I've heretofore said.

95
* * * * * *

96
Now, the verdict is for you, ladies and gentlemen of the jury. Remember and consider all of the evidence, giving it the weight to which you determine it to be entitled, remembering that you are not merely recommending a punishment. The verdict you return will actually fix the punishment at death or life imprisonment.

97
Remember again that your verdict must be unanimous. All twelve of you must agree. Please note, it therefore cannot be reached by a majority vote or by a percentage. It must be the verdict of each and every one of you.

98
Remember that your verdict must be a sentence of death if you unanimously find at least one aggravating circumstance and no mitigating circumstance, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. In all other cases, your verdict must be a sentence of life imprisonment.

99
You will be given a verdict slip, which you will refer to,... upon which to record your verdict and findings. You will follow the directions on the verdict slip and do whatever is required.

100
Ladies and gentlemen, finally, after conscientious and thorough deliberation, if you are unable to agree on your findings and verdict, you should report to me. If in my opinion further deliberations will not result in a unanimous agreement on the sentence, whichever it may be, it will be my duty to then impose a sentence upon the defendant[] ... of life imprisonment.

101
Hackett, 212 F.Supp.2d at 400-01 (footnote omitted). The verdict form, as completed by Hackett's jury, is as follows:

102
We, the jury, enpaneled [sic] in the above entitled case, having heretofore determined that the defendant ... is guilty of murder of the first degree, do hereby find:

103
AGGRAVATING CIRCUMSTANCE(S) 1. The victim was a fireman, peace officer or public servant concerned in official detention who was killed in the performance of his duties ( )

104
2. The defendant paid or was paid by another person or had contracted to pay or be paid by another person or has conspired to pay or be paid by another person for the killing of the victim (√)

105
3. The victim was being held by the defendant for ransom or reward, or as a shield or hostage ( )

106
4. The death of the victim occurred while defendant was engaged in the hijacking of an aircraft ( )

107
5. The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing his testimony against the defendant in any grand jury or criminal proceeding involving such offenses ( )

108
6. The defendant committed a killing while in the perpetration of a felony ( )

109
7. In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense (√)

110
8. The offense was committed by means of torture ( )

111
9. The defendant has a significant history of felony convictions involving the use or threat of violence to the person ( )

112
10. The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was possible or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense ( )

113
11. The defendant has been convicted of another murder, committed either before or at the time of the offense at issue ( )

114
12. The defendant has been convicted of voluntary manslaughter, committed either before or at the time of the offense at issue. ()

MITIGATING CIRCUMSTANCE(S)

115
a. The defendant has no significant history of prior criminal convictions ( )

116
b. The defendant was under the influence of extreme mental or emotional disturbance ( )

117
c. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired ( )

118
d. The age of the defendant at the time of the crime ( )

119
e. The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution under Section 309 (Relating to duress), or acted under the substantial domination of another person ( )

120
f. The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts ( )

121
g. The defendant's participation in the homicidal act was relatively minor ( )

122
h. Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense ()

We, the jury, have found unanimously

123
[√] at least one aggravating circumstance and no mitigating circumstance. The aggravating circumstance(s) (is) (are) ____ # 2 and # 7 ____ [ ] one or more aggravating circumstances which outweigh any mitigating circumstances. The aggravating circumstance(s)(is)(are) ________

124
We, the jury, unanimously render the following sentencing verdict:

DEATH (√)
LIFE IMPRISONMENT()

125
App. at 98-100. The verdict form was signed by all twelve jurors. Id. at 100.

D. AEDPA "Contrary To" Analysis

126
Our first task under AEDPA is to inquire whether the decision of the Pennsylvania Supreme Court was contrary to United States Supreme Court precedent. See Werts, 228 F.3d at 196-97. The District Court held that it was, primarily because "[t]he state court failed to cite, apply, or otherwise refer to the Boyde standard." Hackett, 212 F.Supp.2d at 404. The Pennsylvania Supreme Court did analyze Hackett's claim under Mills, but did so improperly, the District Court concluded, because it focused on the constitutionality of the state sentencing statute rather than on the issue of jury confusion, relied solely on prior state court cases (none of which applied Boyde either), and failed to consider the jury instructions in the context of the entire proceeding. Id. at 404-06.

127
We agree with the District Court that the Pennsylvania Supreme Court's treatment of Hackett's Mills claim was not comprehensive. Indeed, the sum total of its discussion on this issue was as follows:

128
Hackett next argues that the trial court erred in its charge to the jury during the penalty phase by failing to instruct the jury they need not be unanimous in finding mitigating circumstances in accord with Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Mills concerned a Maryland statute which required jurors unanimously to agree on each individual mitigating circumstance after deciding aggravating factors. Absent unanimous agreement, the Maryland statute barred consideration of the mitigating evidence as to a given circumstance. The Supreme Court held that the statute violated the Eighth Amendment because a single Maryland juror could force a death verdict on the other jurors by refusing to agree that mitigation existed.

129
The Pennsylvania statute, 42 Pa.C.S. § 9711, does the opposite and, therefore, does not violate the rule in Mills. The Pennsylvania statute, 42 Pa.C.S. § 9711(c)(1)(iv), requires that the jury unanimously agree that no mitigating circumstances exist and unanimously agree on a verdict for a sentence of death. Thus, while a single Pennsylvania juror can always prevent a death sentence, a single juror can never compel one, as could a single juror under the former Maryland statute. Jury instructions in the penalty phase which follow the language of the death penalty statute do not recreate the error in Mills. Commonwealth v. Tilley, 528 Pa. 125, 595 A.2d 575 (1991); Commonwealth v. Williams, 524 Pa. 218, 570 A.2d 75 (1990); Commonwealth v. O'Shea, 523 Pa. 384, 567 A.2d 1023 (1989), cert. denied, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990); Commonwealth v. Frey, 520 Pa. 338, 554 A.2d 27 (1989).

130
Here, the trial court's instructions exactly followed the death penalty statute, 42 Pa.C.S. § 9711.12 Indeed, Hackett concedes that the lower court "recited the language of the statute." The trial court did not err by following the statutory language.

131
Commonwealth v. Hackett, 627 A.2d at 725 (internal footnote omitted) (emphasis in text).

132
Although cursory, the Pennsylvania Supreme Court's decision was not contrary to Supreme Court precedent for the purpose of granting habeas relief under AEDPA. As the Supreme Court explained in Williams, "[t]he word `contrary' is commonly understood to mean `diametrically different,' `opposite in character or nature,' or `mutually opposed.'" 529 U.S. at 405, 120 S.Ct. 1495 (quoting Webster's Third New International Dictionary 495 (1976)). Thus, "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." Id. The Pennsylvania Supreme Court applied Mills, but did not apply Boyde. Its analysis thus was incomplete, as Boyde is the governing standard of review for Mills claims of juror confusion. But it does not follow that the state court decision also was contrary to Supreme Court precedent. This is because Boyde clarifies Mills, but does not contradict it.

133
Mills required, among other formulations, a petitioner to show a "substantial probability"13 of juror confusion, whereas Boyde clarified that standard to require a "reasonable likelihood" of the same. In any event, analyzing a Mills claim under Mills alone (i.e., instead of under Boyde) does not raise the bar for a petitioner to obtain relief.

134
If the Pennsylvania Supreme Court denied Hackett relief under Mills, it logically would have done the same if applying Boyde. A petitioner unable to demonstrate a substantial probability of juror confusion cannot show a reasonable likelihood of as much. Thus, the absence of a Boyde analysis did not "result[ ] in a decision that was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States...." 28 U.S.C. 2254(d)(1) (emphasis added). Put another way, had the Pennsylvania Supreme Court applied Boyde, it would have arrived at the same result. For this reason, we disagree with the District Court and conclude that Hackett's claim is more appropriately reviewed under § 2254(d)(1)'s second, "unreasonable application of" standard. Cf. Banks I, 271 F.3d at 545 n. 21 ("We think the better analysis, since the Pennsylvania Supreme Court referenced Mills and seemed to be considering how it impacted the Banks case, is to rely on the `unreasonable application' [standard]....").

135
E. AEDPA "Unreasonable Application Of" Analysis

136
In determining "whether the state court decision was based on an `unreasonable application of' Supreme Court precedent," Werts, 228 F.3d at 197, we note at the outset the emphasis in our prior opinions that we are to focus on the charge delivered to the jury and the language in the verdict form as a whole, Frey, 132 F.3d at 924; Zettlemoyer, 923 F.2d at 308-09 n. 22, and not the jury's result. Banks I, 271 F.3d at 547 (quoting Frey, 132 F.3d at 923). The reason that we need not determine whether the jurors actually misunderstood the trial court's instructions and verdict form is that, in many instances, it would be quite difficult to do so. Cf. Mills, 486 U.S. at 381, 108 S.Ct. 1860.

137
The completed verdict forms in Zettlemoyer, Frey, and Banks indicate that the jury in each case imposed a death sentence after finding unanimously that the aggravating circumstances outweighed the mitigating circumstances. Zettlemoyer, 923 F.2d at 308 ("We the jury have found unanimously ... the aggravating circumstance outweighs [the] mitigating circumstances."); Commonwealth v. Frey, 554 A.2d at 31 n. 2 ("We the jury have found unanimously ... [o]ne or more aggravating circumstances which outweigh any mitigating circumstances."); Banks I, 271 F.3d at 549-50 ("We the jury have found unanimously ... [o]ne or more aggravating circumstances which outweigh any mitigating circumstance or circumstances."). In all three cases, the jury found at least some mitigating evidence. What we cannot know, however, is the precise extent to which the jurors properly considered the evidence of mitigating circumstances when weighing that evidence against the aggravating circumstances. Some measure of uncertainty is unavoidable when the jury weighs mitigating circumstances against aggravating circumstances but reveals only the result of its efforts. In other words, the opaque nature of the jury's deliberative process limits our review primarily to the trial court's instructions and the verdict form to determine whether it is reasonably likely the jury understood the charge to require unanimity in finding mitigating evidence exists.

138
But this case is different, for the jury's verdict form demonstrates unequivocally that there is no reasonable likelihood that the jurors applied the challenged instruction in a way that prevented the consideration of constitutionally relevant evidence. Hackett's jury "found unanimously at least one aggravating circumstance and no mitigating circumstance" (emphasis added). We do not conclude there was a Mills-Boyde violation here, as no juror found that there was any mitigating circumstance.

139
This result is logically unavoidable. When the jury found unanimously that there was no mitigating circumstance, it left no room to speculate that perhaps one juror was confused about unanimity requirements and therefore precluded from considering mitigating evidence. After all, if even a single juror thought that there was any mitigating circumstance, then that juror could not join a verdict in which the jury "found unanimously" that there was "no mitigating circumstance." The finding of no mitigating circumstance—versus when a mitigating circumstance was outweighed by aggravating circumstances — distinguishes Hackett's case from Zettlemoyer, Frey, and Banks, all of which were "weighing" cases.14

140
Our dissenting colleague points out that, like this case, Mills was not a "weighing" case. There is, however, an important difference between the two. The jury verdict form in Mills required jurors to find unanimously the presence of mitigating circumstances. See 486 U.S. at 387, 108 S.Ct. 1860 ("Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked `yes' has been proven to exist by a preponderance of the evidence. . . ."). That is not our case, where juror unanimity was on the absence of mitigating circumstances. "Such a requirement ... enhances the reliability of the jury's decision without any risk that a single holdout juror may impose a sentence against the views of the other 11." McKoy, 494 U.S. at 455 n. 1, 110 S.Ct. 1227 (Kennedy, J., concurring).

141
The Supreme Court in Mills stated its conclusion succinctly: "Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently require the jury to impose the death penalty, is one we dare not risk." 486 U.S. at 384, 108 S.Ct. 1860. We recognized as much in Frey, where then Chief Judge Becker wrote: "In sum, the essential holding of Mills-McKoy is simply that one juror cannot prevent the others from giving effect to mitigating evidence, regardless of whether the imposition of a life sentence depends on the existence of such evidence." 132 F.3d at 921. The Pennsylvania Supreme Court, however, did not fail to heed Mills' s admonition when it denied Hackett's direct appeal—four years before Frey had been decided by our Court—on the ground that Pennsylvania's capital sentencing scheme

142
requires that the jury unanimously agree that no mitigating circumstances exist and unanimously agree on a verdict for a sentence of death. Thus, while a single Pennsylvania juror can always prevent a death sentence, a single juror can never compel one, as could a single juror under the former Maryland statute. Commonwealth v. Hackett, 627 A.2d at 725 (emphases in text). The Pennsylvania Supreme Court is correct, for if even only one juror had found any mitigating circumstance the jury could have imposed a death sentence only if it found unanimously that there was one or more aggravating circumstances that outweighed any mitigating circumstances. Plainly the jury could not have imposed the sentence that it did—death, after unanimously finding aggravating circumstances and no mitigating circumstance—if even a single juror was unwilling to join in the verdict.

143
A "state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407, 120 S.Ct. 1495. The Pennsylvania Supreme Court identified Mills as the correct governing legal rule under which to analyze Hackett's claim of juror confusion. That Court's application of Mills may have been both cursory and undertaken without the subsequently clarified standard of review found in Boyde, but these factors do not provide a sufficient basis for granting habeas relief. "Under § 2254(d)(1)'s `unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant statecourt decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411, 120 S.Ct. 1495. The Pennsylvania Supreme Court's application of Mills was reasonable in this case, as a single dissenting juror could have made impossible the unanimous finding of no mitigating circumstance.15

F. Conclusion

144
We hold there is no reasonable likelihood the jury in Hackett's case applied the challenged instruction and verdict form in a way that prevented the consideration of constitutionally relevant evidence. We conclude as much because the jury unanimously found no mitigating circumstance. Because the jury found no mitigating circumstance, it did not proceed to determine whether any mitigating circumstance outweighed the aggravating circumstances it unanimously found, as did the juries in Zettlemoyer, Frey, and Banks. Accordingly, those decisions are distinguishable from this case. Even under pre-AEDPA review Hackett would not have been entitled to federal habeas relief. Inasmuch as after AEDPA's enactment the federal courts' deference to state courts has been enhanced, there is even less reason to grant Hackett's petition. We therefore reverse the judgment of the District Court with instructions to vacate its order granting the petition for writ of habeas corpus and instead enter an order denying the petition.

Notes:

*
Judge Becker completed his term as Chief Judge on May 4, 2003

1
We delayed issuing this decision because the Supreme Court acceptedcertiorari in a case from our Court that raised the possibility of addressing the question before us. See Beard v. Banks, 539 U.S. 987 (2003) (order granting certiorari in Banks v. Horn, 316 F.3d 228 (3d Cir.)). The Supreme Court, however, decided Beard v. Banks without reaching that question. No. 02-1603, ___ U.S. ___, at ___ n. 2, 124 S.Ct. 2504, 159 L.Ed.2d 494, 2004 WL 1402567, at *4 n. 2 (June 24, 2004) (declining to address "whether the Court of Appeals also erred in concluding that the Pennsylvania Supreme Court unreasonably applied Mills").

2
The Pennsylvania Supreme Court, in affirming Spence's sentence on direct appeal, stated that "[t]he jury found the two aggravating [circumstances argued by the Commonwealth] and no mitigating circumstances, and returned a sentencing verdict of death."Spence, 627 A.2d at 1180. This is not correct. Spence's verdict sheet, submitted as part of the record in Hackett's appeal before this Court, indicates the jury found the same two aggravating circumstances as it had in Hackett's case, but as to Spence the jury also found the following mitigating circumstance: "The defendant has no significant history of prior criminal convictions." Accordingly, the jury "found unanimously ... one or more aggravating circumstances which outweigh any mitigating circumstance[]."

3
Gray, 608 A.2d at 536. The verdict sheets for Gray and Barrett could not be located. That they were sentenced to life imprisonment for first degree murder means the jury either found no aggravating circumstance or found one or more aggravating circumstances that were outweighed by one or more mitigating circumstances.

4
Id. While the Boyde majority indicated it merely was clarifying the proper standard of review, the four Justices in dissent vehemently disagreed. "To the contrary, in reviewing criminal judgments we have described the difference between a standard that demands reasonable certainty on the one hand, and one that tolerates significant doubt on the other, as the difference that sets apart `a society that values the good name and freedom of every individual.'" Id. at 394 n. 2, 110 S.Ct. 1190 (Marshall, J., dissenting) (quoting In re Winship, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

5
As one definition of "likely" is "having a better chance of existing or occurring than not," Webster's Third New International Dictionary 1310 (1971), someone could plausibly argue that "reasonable likelihood" is not a lesser standard than "more likely than not."See also Funk & Wagnall's New Standard Dictionary of the English Language 1434 (1941).

6
It may appear thatBoyde focuses on the confusion of the entire jury and not a single juror. We avoid that avenue of analysis. Its logical end is a standard that requires all twelve jurors to be confused by the jury instruction in a capital sentencing case. But would the taint of confusion be any less to a defendant if but eleven (or fewer) jurors were confused? We believe instead that the Supreme Court focuses more aptly on the likeliness legal standard for an allegedly confusing instruction.

7
InFrey, as in Zettlemoyer, the jury imposed a death sentence after finding that one or more aggravating circumstances outweighed any mitigating circumstances. See Commonwealth v. Frey, 520 Pa. 338, 554 A.2d 27, 31 n. 2 (1989) (reproducing completed verdict slip).

8
The Court also noted that the verdict form inFrey was "substantially the same" as in Zettlemoyer. Id. However, the text of the charges in the two cases differed significantly. "Since Zettlemoyer considered the verdict form and the court's instructions as a whole in reaching its decision, see Zettlemoyer, 923 F.2d at 308 n. 22, and since the charge here was significantly different, the discussion in Zettlemoyer regarding the propriety of the verdict slip is not controlling." Id.

9
Our decision inBanks I granted the petitioner habeas relief after concluding that the Pennsylvania Supreme Court had unreasonably applied federal law in evaluating the petitioner's Mills claim. 271 F.3d at 543-551. In so doing, our Court found it unnecessary to evaluate whether Mills applies retroactively to cases on habeas review per Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), because the Pennsylvania Supreme Court had not ruled on retroactivity. Banks I, 271 F.3d at 541-43.
The United States Supreme Court in a per curiam opinion reversed the panel's determination that a Teague analysis was unnecessary. Banks II, 536 U.S. at 267, 122 S.Ct. 2147. In so doing, however, the Supreme Court stated that it did not reach the petitioner's argument that our Court erred by concluding that the Pennsylvania Supreme Court's decision was unreasonable under Mills. Id. at 271, 122 S.Ct. 2147. On remand, our Court reaffirmed its prior analysis of the petitioner's Mills claim, stating:
Our previous ruling in this case was reversed by the Supreme Court only insofar as we held it unnecessary to decide whether Mills had retroactive application. Because we now hold that our application of Mills on habeas review of Banks's sentence was not prohibited by Teague, we do not disturb the remainder of our previous opinion, including its discussion and holding with regard to the merits of Banks's Mills claim. We merely augment that opinion by essentially replacing its discussion of the Teague issue with the analysis here. Accordingly, our judgment requiring a new penalty phase for Banks will remain unchanged.
Banks III, 316 F.3d at 247. With the Supreme Court overturning our conclusion in Banks III as to the retroactivity of Mills, Banks IV, ___ U.S. ___, at ___, 124 S.Ct. 2504, 159 L.Ed.2d 494, 2004 WL 1402567, at *11 (concluding that Mills cannot be applied retroactively because it "announced a new rule of criminal procedure that falls within neither Teague exception"), our holding in Banks I as to the petitioner's Mills claim is no longer precedential, as Mills no longer applies. Nonetheless, the discussion in Banks I on Mills is instructive and relevant to our current inquiry.

10
TheBanks I Court moved directly to AEDPA's second, "unreasonable application of" clause, bypassing any analysis of whether the state court decision was "contrary to" federal law. The panel explained that "Banks argues that, in fact, the determination was `contrary to' Mills, because it violated Mills' dictates. We think the better analysis, since the Pennsylvania Supreme Court referenced Mills and seemed to be considering how it impacted the Banks case, is to rely on the `unreasonable application,' which, in any event, is clearly evident." Id. at 545 n. 21.

11
Banks I also briefly examined the jury poll, but concluded that "the polling does not appear either to add to or reduce the confusion as to the Mills problems we have already identified in the penalty phase instructions and verdict slip." Id. at 551.

12
The Pennsylvania Supreme Court stated here in a footnote: "Hackett argues that his claim is unique in that he does not question the constitutionality of the statute itself, but only the instructions given by the trial court. Since the trial court here followed the language of the statute, word for word in its instruction, this is hardly a distinction."Commonwealth v. Hackett, 627 A.2d at 725 n. 6.

13
"Probability" should be understood as the "relative frequency of the occurrence of an event based on the ratio between its occurrence and the total average number of cases necessary to ensure its occurrence ... [,as] when a die is rolled, the [probability] that ... [x] will be thrown is 1 out of 6." Webster's Third New International Dictionary, at 1806 (1971). In this context, "probability" connotes odds or tendency, not whether an outcome is more probable than notSee generally supra Part III.A.3.

14
As inZettlemoyer and Frey, we acknowledge that the Supreme Court in Mills noted that the Maryland Court of Appeals, subsequent to the defendant's sentencing, promulgated a new findings and sentencing form. Zettlemoyer, 923 F.2d at 308 n. 22 (citing Mills, 486 U.S. at 381-83, 108 S.Ct. 1860); Frey, 132 F.3d at 924 (same). As noted by the Supreme Court:
Although we are hesitant to infer too much about the prior verdict form from the Court of Appeals' well-meant efforts to remove ambiguity from the State's capital sentencing scheme, we cannot avoid noticing these significant changes effected in instructions to the jury. We can and do infer from these changes at least some concern on the part of that court that juries could misunderstand the previous instructions as to unanimity and the consideration of mitigating evidence by individual jurors.
Mills, 486 U.S. at 382, 108 S.Ct. 1860 (emphasis in text).
We further recognize, as did Zettlemoyer and Frey, that Pennsylvania likewise has revised its uniform verdict slip for capital cases. Zettlemoyer, 923 F.2d at 308 (quoting Pa. R.Crim. P. 358A); Frey, 132 F.3d at 924 (same). The verdict slip now instructs, in relevant part:
A. We, the jury, unanimously sentence the defendant to (check one):
____ Death
____ Life Imprisonment
B. The findings on which the sentence of death is based are (check one):
____ 1. At least one aggravating circumstance and no mitigating circumstance.
The aggravating circumstance(s) unanimously found (is) (are): ____
____ 2. One or more aggravating circumstances which outweigh(s) any mitigating circumstance(s).
The aggravating circumstance(s) unanimously found (is) (are): ____
The mitigating circumstance(s) found by one or more of us (is)(are): ____
Pa. R.Crim. P. 807 (emphases added).
While we too are hesitant to infer too much from these revisions, we believe it is at least relevant that the wording on the verdict slip as to mitigating circumstances in "weighing" cases was altered significantly (to emphasize that mitigating circumstances may be found by only one or more jurors), whereas no similar change was made to the verdict form to strengthen the directive that a jury's finding of no mitigating circumstance must be unanimous.

15
Though our analysis focuses, as it must, on the jury instructions and verdict form, we note in passing that the comparative verdicts in the four defendants' joint trials support that the jury in this case was not confused. For Hackett, the jury unanimously found no mitigating circumstance while unanimously finding two aggravating circumstances. As to the other defendants, one was sentenced to death because the aggravating circumstances outweighed the mitigating circumstance, and two were sentenced to life imprisonment because the jury either found no aggravating circumstance or found one or more aggravating circumstances that were outweighed by one or more mitigating circumstances

145
BECKER, Circuit Judge, dissenting.

146
The majority rejects Richard Hackett's habeas petition by concluding that the state court did not reach a result that was contrary to, or an unreasonable application of, the Eighth Amendment rule expressed in Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). The majority makes no showing, however, that the instructions and verdict slip in this case were at all different from, or any less confusing than, the instructions and verdict slips which led this Court to grant relief under Mills in Banks v. Horn, 271 F.3d 527 (3d Cir.2001), and Frey v. Fulcomer, 132 F.3d 916 (3d Cir.1997). Instead, the majority justifies its result on the sole ground that Hackett's jury unanimously found "no mitigating circumstance." The majority infers from this finding that Hackett's jury must not have been confused by the instructions and verdict slip with regard to its role in finding mitigating circumstances. Like the able District Judge who granted Hackett's petition, I find this analysis unconvincing.

147
In Banks, this Court granted relief under AEDPA upon concluding that essentially the same instructions and verdict slip made it likely a jury would believe that it could not consider mitigating evidence unless the whole jury was unanimous as to the existence of a particular mitigating factor.16 The majority tries to evade Banks by noting that Hackett's jury found "no mitigating circumstance," whereas in Banks (and in Frey) the jury found at least one mitigating circumstance and reached the weighing stage. In my view, this distinction between the cases is immaterial. The trial court never explained what it meant to "unanimously" find "no mitigating circumstance," and its instructions, as we have held in Banks and Frey, were reasonably likely to lead a jury to believe that unanimity was required before it could even consider a mitigating factor. Thus, contrary to the majority's suggestion that each juror in Hackett's case must have considered and rejected all mitigating evidence, the record more accurately reflects that this jury likely was unanimous only in finding that there was "no mitigating circumstance" upon which all jurors could agree.

148
Such an understanding of its instructions and verdict slip violated Hackett's rights under the Eighth Amendment, as individual jurors were prevented from considering a mitigating factor, and possibly voting for a lesser sentence, absent the agreement of all jurors as to the presence of that factor. Put another way, a single juror, insisting Hackett failed to prove any mitigating circumstance by a preponderance of the evidence, could compel the death sentence despite other jurors who felt mitigating evidence was proven and sufficient to warrant a life sentence. This is precisely the situation that the Mills rule seeks to prevent. Indeed, the majority observes only in passing that Mills itself was a case in which the jury found no mitigating circumstance and the Supreme Court vacated the sentence due to the likelihood that the jury thought it was precluded from considering mitigating evidence absent unanimity. See Mills, 486 U.S. at 370, 384, 108 S.Ct. 1860.

149
In short, there is a reasonable likelihood, under the standard of Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), that Hackett's jury understood its instructions in a manner that violated Mills. Because the Pennsylvania Supreme Court's rejection of this claim resulted in an unreasonable application of federal law, I respectfully dissent.

I.

150
As a threshold matter, I agree with the majority that the "unreasonable application of" prong of 28 U.S.C. § 2254(d)(1) appears to provide the best fit for analyzing the Pennsylvania Supreme Court's decision to reject Hackett's Mills claim.17 An AEDPA merits analysis of the Mills claim must begin, of course, with a review of the Supreme Court's clearly established holdings in this area. Fortunately, our task in identifying the controlling law is made easier by the fact that our Court has fully explored the Mills question in the past. For example, in Frey, we summarized the relevant law as follows:

151
Under the Supreme Court's current construction of the Eighth Amendment, the sentencer in a death penalty case must be permitted to consider all relevant mitigating evidence that the defendant proffers as counseling less than a sentence of death. Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Accordingly, it is well established that the sentencer cannot be precluded from considering any such evidence. Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Eddings, 455 U.S. at 114, 102 S.Ct. 869. The source of this preclusion is irrelevant; whether its source is statutory (Lockett), the sentencing court (Eddings), or an evidentiary ruling (Skipper), the result is the same.

152
In Mills, the Supreme Court relied on these precedents to conclude that a death sentence should be vacated if there is a substantial probability that reasonable jurors, upon receiving the judge's instructions and attempting to complete the verdict form based on those instructions, may have thought that they could only consider those mitigating factors which they unanimously found to exist. Put differently, if the jurors were led to believe that they could not each individually consider certain mitigating circumstances because there was not unanimous agreement as to the existence of those circumstances, then "some jurors were prevented from considering factors which may call for a less severe penalty, and petitioner's sentence cannot stand." Id. at 376, 108 S.Ct. 1860 (internal citations omitted). See also Zettlemoyer v. Fulcomer, 923 F.2d 284, 306-07 (1991) (discussing Mills).

153
Frey, 132 F.3d at 920-21.

154
In Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), as the majority explains, the Supreme Court clarified that the proper standard for assessing a Mills challenge is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Id. at 380, 108 S.Ct. 1860. Thus, as we made clear in Frey, "while our inquiry is directed toward whether the [] instruction suffers from the same type of defect discussed in Mills (i.e. that the instruction could be read to require a unanimous finding of mitigating circumstances), our standard is that of Boyde, not Mills." Frey, 132 F.3d at 921.

155
Frey was a pre-AEDPA case in which we found a Mills violation upon review of Pennsylvania jury instructions that mirrored, in all pertinent respects, the instructions at issue here. Cf. Frey, 132 F.3d at 922 ("The Crimes Code provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.") with Hackett, 212 F.Supp.2d. at 400-01 ("The Crimes Code provides that a verdict must be the sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstance [sic] which outweigh any mitigating circumstances that you may determined."). The majority understandably makes no attempt to distinguish the language of the Frey instructions from the instructions to Hackett's jury.

156
We observed in Frey that this instruction "emphasize[d] the importance of a unanimous finding, using the phrase frequently and in close proximity to within seven words of the mitigating circumstances clause." 132 F.3d at 923 (quoting the pertinent language as "if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance"). We noted that this "clause is, to the ear and to the mind, one sound bite," id., and given the use of "unanimously" in close proximity to "mitigating circumstances," we held that, when viewed in the context of the entire charge, "it is quite possible that a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously." Id.

157
In Banks, a post-AEDPA case, we confronted a "very similar charge" to that issued in Frey and held that it, too, ran afoul of Mills. Banks, 271 F.3d at 547-49. The instructions to the jury in Banks provided in relevant part as follows: "The Crime [sic] Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances." Id. at 546-47. The majority makes no attempt at a distinction between the Banks and Hackett instructions, and I see no basis for one: in both cases, the instructions, viewed in their entirety, were likely understood to require unanimity to consider a mitigating factor.18

158
We concluded in Banks that the state court's rejection of the petitioner's claim resulted in an unreasonable application of federal law. Banks, 271 F.3d at 545. We observed that the state court failed (as it did here) to analyze how the jury might have interpreted its instructions and verdict slip, merely holding that there was no error because the instructions tracked the language of 42 Pa. Cons.Stat. § 9711(c)(1)(iv). We found this determination insufficient because Mills, in conjunction with Boyde, requires a reviewing court to examine the entire charge and ask whether a reasonable jury could have concluded that unanimity was required to find a mitigating circumstance. Id. at 546. In fact, we quoted in Banks the District Court's reasoning in Hackett's case to explain that the Pennsylvania Supreme Court in both cases

159
"misconstrue[d] the court's task in examining for Mills error by focusing on the meaning of the statute rather than on the issue of jury confusion. As Mills instructs, it is the danger of jury misinterpretation of the statutory scheme, rather than the existence of a constitutional interpretation of the statute by the courts, that creates the Mills problem."

160
Id. at 544-45 (quoting Hackett v. Price, 212 F.Supp.2d 382, 404 (E.D.Pa.2001)).

161
Moreover, when discussing in Banks the reasons why the state court's decision to reject the Mills claim amounted to an unreasonable application of federal law, we observed that the Pennsylvania Supreme Court's analysis there contained the same flaw as its analysis in Hackett's case. We explained as follows:

162
In Hackett, the Pennsylvania Supreme Court had attempted to distinguish Mills based on the Maryland statute, reasoning that since the Maryland statute barred consideration of mitigating evidence unless there was unanimous agreement and the Pennsylvania statute required unanimity as to the absence of a mitigating circumstance, the Pennsylvania statute allowed individual jurors to prevent death sentences but not to compel them. See Hackett, 212 F.Supp.2d 382, 2001 WL 884721 at *19. The differences in the statutes were not enough to render the Pennsylvania statute constitutional, since the danger of jury misinterpretation was present in both statutes, and the Pennsylvania Supreme Court had examined only the statute, not the possibility that the jury had been confused by the instructions given. Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), reh'g denied 495 U.S. 924, 110 S.Ct. 1961, 109 L.Ed.2d 322, established that the jury instructions must be considered in the context of the entire proceeding, and the Pennsylvania Supreme Court's failure to do so was contrary to clearly established federal law. Id. at 21. Here, the Pennsylvania Supreme Court has essentially ignored the teachings of Boyde and engaged the same reasoning regarding the constitutionality of the instructions as in Hackett — itself constitutionally defective.

163
Banks, 271 F.3d at 545-46.

II.

164
It is against this background that we reach our consideration of the instructions and verdict slip employed in Hackett's case. As noted, the majority does not, and cannot, distinguish Frey and Banks on whether the jury likely understood the instructions here to require unanimity to consider mitigating evidence. Like those earlier cases, the Hackett court used the word "unanimously" in close proximity to "mitigating circumstances," instructing the jury that it must return a death sentence "if you unanimously find at least one aggravating circumstance and no mitigating circumstance." As we explained in Frey, it is likely "a juror would, regardless of other qualifying language, believe that mitigating circumstances had to be found unanimously." Frey, 132 F.3d at 923. The Hackett trial court also repeated the instruction near the end of its charge, thus twice reinforcing the notion that the jury needed unanimity. See Maj. Op. at 297. Moreover, as in Banks and Frey, nowhere did the court explain or even hint that unanimity was unnecessary to find a mitigating factor. I note that this flaw in the jury instructions is seemingly remedied by Pennsylvania's current model instructions, quoted in the margin.19

165
The language of the verdict slip is also ambiguous, at best, as to the need for unanimity. The preface to the jury's finding provides, "We, the jury, have found unanimously ...," following which the jury placed a check to reflect "at least one aggravating circumstance and no mitigating circumstance." In Banks, the corresponding language was identical, see Banks, 271 F.3d at 549, and we held this language "at least confusing, and more likely suggestive, regarding the need for unanimity as to mitigating circumstances." Id. at 550. Moreover, the verdict slip here, as in Banks, had "no additional language that would imply that there is a different standard for aggravating circumstances than there is for mitigating circumstances." Id. "There is also no language anywhere on the form from which the jury could infer that a mitigating circumstance might be marked if only one juror had found that circumstance to exist." Id.

166
Under Boyde, the issue before us is whether it is reasonably likely Hackett's jury interpreted its instructions and verdict slip to mean that it could find a mitigating circumstance only if all twelve jurors agreed upon its existence. This Court has twice resolved that issue in favor of the habeas petitioner with our holdings in Banks and Frey, and there is no basis for a different outcome here. Moreover, our analysis in Banks calls for relief under AEDPA, as we fully explained why the state court's flawed application of Mills is unreasonable under clearly established federal law. See 271 F.3d at 543-551.

167
The majority, nevertheless, holds that there can be no Mills error because Hackett's jury "unanimously" found "no mitigating circumstance," a finding that the majority believes can mean one, and only one, thing— that each juror considered the mitigating evidence and agreed with all other jurors that no mitigating circumstance was proven, resulting in no Mills error. The record reflects, however, the trial court's lone pertinent instruction on the finding of mitigating evidence was its directive to return a death sentence "if you unanimously find at least one aggravating circumstance and no mitigating circumstance." What did it mean to Hackett's jury to "unanimously" find "no mitigating circumstance"? The majority merely offers its view as to what the instruction "plainly" must have meant, but its analysis fails to comply with the Supreme Court's directive in Boyde that "a single instruction to a jury may not be judged in isolation, but must be viewed in the context of the overall charge." Boyde, 494 U.S. at 378, 110 S.Ct. 1190; see also Banks, 271 F.3d at 546 (explaining that "the Boyde standard requires that the court view the instruction in its totality, not examine in isolation a few sentences that reference the Crimes Code."). We must look, therefore, to the full context here rather than offer a facile interpretation of a single instruction viewed in isolation.

168
As noted, the court's charge on mitigating evidence was at best ambiguous. Indeed, we expressly found in Banks that, based on these instructions, "[t]here is no way that a juror would understand that a mitigating circumstance could be considered by less than all jurors." Banks, 271 F.3d at 548 (emphasis added). The Hackett trial court also did not explain that a juror was free to find a mitigating circumstance despite the views of other jurors, and it issued no instruction suggesting that a finding of "no mitigating circumstance" should reflect that each juror had considered and rejected all mitigating evidence individually rather than reflecting that there was no mitigating circumstance of common agreement. The language of the verdict slip was likewise ambiguous, if not suggestive, as to a need for unanimity on mitigating circumstances. The verdict slip also contained no language that would imply that mitigating circumstances were subject to a different standard or that mitigation might be found by only one juror.

169
Hackett's jury, then, was left to decide whether to check the box reflecting a finding of "at least one aggravating circumstance and no mitigating circumstance" based solely on its understanding that it could find a mitigating circumstance only with the unanimous agreement of all jurors. In this light, it seems far more likely, if not outright certain, that the jury believed itself required to return a death verdict if it unanimously found an aggravating circumstance and unanimously found "no mitigating circumstance" upon which all jurors could agree. As Judge Padova observed:

170
With respect to the specific question of whether the clause requires the unanimous rejection of all mitigating factors, it is simply not clear, in the context in which it was given, whether the instruction means that a death sentence is warranted if the jury unanimously finds at least one aggravating circumstance and unanimously finds that no mitigating circumstances exist (as the [majority] contends), or if the phrase means a death sentence is warranted if the jury unanimously finds at least one aggravating circumstance and finds no unanimously agreed upon mitigating circumstances. The jury's interpretation of the unanimity requirement as to the rejection of mitigating circumstances would depend on how the jury understood and employed the concept of unanimity. If the jury believed that all jurors would have to agree as to the existence of the same particular mitigating circumstance, then the jury could reach a death verdict even if individual jurors believed mitigating factors existed, so long as all the jurors did not agree as to the existence of a particular mitigating circumstance. Such a jury would meet the requirement of the "no mitigating circumstance" prong on the basis that all the jurors agreed, unanimously, that there was no mitigating circumstance that was commonly agreed upon by all twelve jurors.

171
. . .

172
The ambiguity of the language of the sentencing statute, the additional jury instructions, and the verdict form all contribute to the conclusion that it was reasonably likely the jury believed it must find mitigating circumstances unanimously before considering them, and that it could reach a verdict of death under the "no mitigating circumstance" prong even if one or more jurors believed that a mitigating circumstance existed without performing the weighing inquiry.

173
Hackett, 212 F.Supp.2d at 411-412.

174
The District Court was correct that we must infer from the record that this jury acted in accordance with a belief that unanimity was required to find a mitigating factor, and that its finding of "no mitigating circumstance" reflects that erroneous belief. The majority's alternative view is untenable, as it merely assumes, with no record support, that the jury applied its instructions so as not to violate Mills. I find this assumption a troubling basis upon which to affirm a sentence of death.

175
In addition to ignoring the context of this case, the majority, as noted above, observes only in passing, that the jury in Mills likewise found no mitigating circumstance to exist and imposed a death sentence without reaching the weighing stage. Mills, 486 U.S. at 370, 108 S.Ct. 1860. The petitioner in Mills argued that the court's instructions and verdict slip served "to require the imposition of a death sentence if the jury unanimously found an aggravating circumstance, but could not agree unanimously as to the existence of any particular mitigating circumstance." Id. at 371, 108 S.Ct. 1860. The petitioner thus claimed that "even if some or all of the jurors were to believe that some mitigating circumstance or circumstances were present, unless they could unanimously agree on the existence of the same mitigating factor, the sentence necessarily would be death." Id. The Maryland Court of Appeals rejected this claim, concluding, inter alia, that because the instructions and verdict slip expressly required unanimity in the acceptance or rejection of a mitigating circumstance, the jury's finding likely reflected (as the majority concludes here) a unanimous determination that a mitigating circumstance did not exist, not a failure to find unanimously the existence of a mitigating circumstance. Id. at 372, 108 S.Ct. 1860.

176
The Supreme Court rejected the Maryland court's conclusion as to what the jury likely understood its task to be. The Court distilled the question before it as follows:

177
If the jury understood the verdict form as the Court of Appeals asserted it should have, then every time it marked "no" beside a mitigating circumstance it indicated its unanimous conclusion that petitioner had not proved the relevant facts by a preponderance of the evidence, and thus the court properly upheld the judgment. On the other hand, if the jury understood that it should mark "no" when it failed to agree unanimously that a mitigating circumstance existed, then some jurors were prevented from considering "factors which may call for a less severe penalty," Lockett v. Ohio, 438 U.S. at 605, 98 S.Ct. 2954, and petitioner's sentence cannot stand.

178
Mills, 486 U.S. at 376, 108 S.Ct. 1860 (footnote omitted). The Court conceded that the Maryland Court of Appeals' interpretation of the record was "plausible," but it found, after reviewing the instructions as a whole and the language of the verdict slip, that it could not reject the petitioner's interpretation "with any degree of certainty." Id. at 377, 108 S.Ct. 1860. The Court thus vacated the sentence because the jurors "well may have thought they were precluded from considering mitigating evidence unless all 12 jurors agreed in the existence of a particular such circumstance." Id. at 384, 108 S.Ct. 1860.

179
While the language of the instructions in Mills took a different form than those at issue here, see 486 U.S. at 378-80, 108 S.Ct. 1860, the practical effect of the jury's finding of no mitigation in each case is the same. As in Mills, the instructions here likely prevented the jury from considering mitigating evidence absent unanimity, and in both cases the juries found no mitigating factor to exist. Unlike my colleagues, however, the Supreme Court refused to infer from the finding of no mitigation that the jury must have reached a unanimous conclusion that the petitioner failed to prove the relevant facts by a preponderance of the evidence. Such an inference could not be drawn in Mills after a consideration of the context of the jury instructions and verdict slip, and the same is true here. Of course, we cannot verify whether Hackett's jury in fact believed itself precluded from considering mitigating evidence absent unanimity, but we can safely conclude that there is a reasonable likelihood the jury interpreted its task in that manner, and that this death sentence, therefore, cannot stand under Mills.

180
The majority's attempt to find support for its conclusion in the different sentencing verdicts reached for Hackett's co-defendants rings hollow. The jury acted upon the same instructions in its consideration of the sentencing evidence as to all four defendants. The jury sentenced one defendant (Spence) to death after finding that aggravation outweighed mitigation, but given its instructions and verdict slip, the jury likely reached a unanimous finding as to a mitigating circumstance (in violation of Mills) and thereby reached the weighing stage. This does nothing to diminish the showing of a Mills error as to Hackett. The same can be said for the two co-defendants (Gray and Barrett) who received life sentences given its instructions, the jury likely was either unanimous in its agreement that the Commonwealth failed to prove an aggravating circumstance, or unanimous as to particular mitigating circumstances and found that those mitigating circumstances outweighed the aggravating circumstances, thereby resulting in life sentences. The different sentences thus do nothing to bolster the majority's speculation that there was no Mills error.

181
It should be added that Hackett's jury was not without substantial mitigating evidence to consider. The Pennsylvania death penalty statute specifies eight categories of mitigating evidence, and Hackett argued mitigation under five of those categories: "[t]he defendant has no significant history of prior criminal convictions"; "[t]he defendant was under the influence of extreme mental or emotional disturbance"; "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired"; "[t]he age of the defendant at the time of the crime"; and "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa. Cons.Stat. § 9711(e)(1)-(4) and (8).

182
Hackett was twenty years old at the time of the offense. He had one prior conviction in Montgomery County at age nineteen for conspiracy and four counts of burglary, for which he was sentenced to concurrent terms of ten and one-half to twenty-three months imprisonment. His mother, Bonnie Hackett, testified that her son twice failed the first grade and suffered from severe learning problems that resulted in his attending a special school throughout childhood for the learning and emotionally disabled. She further testified, and documentary evidence reflected, that Hackett was diagnosed with perception problems and as functioning at a "low average" or "dull normal" range of intelligence based on separate full-scale IQ scores of 80 and 85. She testified that her son began to abuse alcohol around age eighteen. Ann Marie Clay, a long-time neighbor and family friend, also testified to Hackett's childhood difficulties.

183
Doctor Albert Levitt, a psychologist, testified as to the results of various tests he performed on Hackett before trial. He explained the results as showing "very regressed, immature perception of reality situations, which is a sign of immaturity and possibly illness." App. at 48. Hackett also displayed a low-level of maturity, signs of depression, suicidal problems, an immature view of social relationships, anxiety, and "psychosexual difficulties." Id. at 51-52. Doctor Levitt concluded that Hackett "was limited in terms of coping mechanisms, limited in terms of the way he functions, limited in understanding social relationships. There was a significant degree of psychopathology when I saw him, with a lot of morbid and negative thought processes." Id. at 54.

184
Doctor Levitt also described the results of the standardized Minnesota Multiphasing Inventory, a computer-graded true/false test. He explained the results as indicating, among other things: "[l]imited interpersonal resources"; "[h]igh clinical depression, which means that his depression has reached pathological limits"; "[p]rojective of blame and hostility"; "[p]aranoid features"; "[l]ook[s] for delusions of persecution and maltreatment"; "[m]ay have a thought disorder[, which] would be schizophrenia"; and "[h]yperactive and agitated." Id. at 55-56. Doctor Levitt found these results consistent with his own finding that "the clinical impression was schizoaffective disorder and major depression." Id. at 56. He opined that Hackett "is an emotionally disturbed individual, especially when he has to interact in social situations," and that if "he has to interact socially, he tends to get anxious, confused and develops all kinds of distorted ideations." Id. at 57. Doctor Levitt added that "[a]lcohol would have a significant effect" on Hackett because "[h]is perceptions of reality are not good in the first place, and alcohol would cause all these things to become more distorted." Id. at 59.

185
The likelihood that Hackett's jury misunderstood its task, resulting as it did in the inability of individual jurors to consider the evidence in mitigation and possibly impose a lesser sentence, poses precisely the type of Eighth Amendment problem that the Mills rule seeks to eliminate. I again refer to Judge Padova's thoughtful analysis:

186
Consider, for example, the following scenario. All twelve jurors agree that a particular aggravating factor exists. Two of the jurors conclude that age is a mitigating factor in the case; however, the other ten jurors do not agree. None of the jurors believe that any other mitigating factors exist, and so the jury is not unanimous as to the existence of the individual mitigating factor. Believing that unanimity is required in order to find that a mitigating factor exists, the jurors "find" one aggravating factor, and fail to find any commonly agreed upon mitigating factors. Rather than moving on to the weighing prong and determining if the aggravating circumstance outweighs the mitigating factor, the jury uses its findings and renders a verdict of death on the basis that the jury unanimously agreed to the existence of "at least one aggravating circumstance" and that the jury unanimously agreed that there was "no mitigating circumstance" that was commonly agreed upon by all twelve jurors. Notwithstanding the fact that two of the jurors believed that a mitigating factor existed, because of the jury's erroneous interpretation of the instructions with respect to the requirement of unanimity, the result would be a sentence of death. This scenario even creates the possibility of a death verdict under the "no mitigating circumstance" prong where all twelve jurors believe a mitigating factor to exist, but there is no agreement as to the particular factor. For example, two jurors could believe age is a mitigating factor and the other ten jurors could believe the defendant's lack of significant criminal history is a mitigating factor. All twelve jurors thus believe that a mitigating factor exists, but because they do not all agree as to the same particular mitigating factor, they conclude that there are no commonly agreed upon mitigating factors. Based on their findings, the jurors thus conclude, unanimously, that there are no mitigating factors that were unanimously agreed upon by all the jurors. The jury therefore delivers a verdict of death without ever weighing the aggravating circumstance against the mitigating factors.

187
Hackett, 212 F.Supp.2d at 411-12.

188
Finally, the majority correctly notes that Pennsylvania adopted changes to its verdict slip subsequent to Hackett's trial, see Maj. Op. at 301 n. 14, but the majority seems to believe that these changes pertain to "weighing cases" only and that "no similar change was made to strengthen the directive that a jury's finding of no mitigating circumstance must be unanimous." Id. The changes to Pennsylvania's model jury instructions suggest otherwise.

189
The present model instructions, adopted after Hackett's trial, provide in pertinent part as follows with regard to how a Pennsylvania jury should reach its capital sentencing findings and record them on the verdict slip:

190
You have been given a sentencing verdict slip on which to record your verdict and findings. I shall now give you further directions on how to go about reaching a verdict, making findings, and using the verdict slip.

191
. . .

192
As I told you earlier, and as the verdict slip indicates, you must agree unanimously on one of two general findings before you can sentence the defendant to death. They are a finding that there is at least one aggravating circumstance and no mitigating circumstances or a finding that there are one or more aggravating circumstances which outweigh any mitigating circumstances. (In deciding whether aggravating circumstances outweigh mitigating circumstances, do not simply count their number. Compare the seriousness and importance of the aggravating with the mitigating circumstances.) If you all agree on either one of the two general findings then you can and must sentence the defendant to death.

193
When voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular mitigating circumstance as present despite what other jurors may believe. (This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives a defendant the full benefit of any mitigating circumstances....)

194
PA. SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS Nos. 15.2502F(7) & 15.2502H(1)-(2) (2000). The Committee Note to instruction 15.2502H explains that the final portion of the above-quoted language is intended to "tell the jurors that they are to make collective decisions about the aggravating circumstances but that they ultimately are to make individual decisions about mitigating circumstances."

195
This addition to the model instructions coupled with the decision no longer to use the word "unanimously" in close proximity to "mitigating circumstances" plainly seeks to eliminate the previous ambiguity as to whether all jurors had to agree on a mitigating factor. The new model instructions state that "each of you is free to regard a particular mitigating circumstance as present despite what other jurors may believe" language that should reduce the risk, present even in a "non-weighing case" like Hackett's, that the jury would interpret its mandate as requiring a death sentence only if it unanimously agreed that there was no mitigating circumstance of common agreement. The new instructions would leave a unanimous finding of "no mitigating circumstance" more likely to reflect that each juror actually considered and rejected all mitigating evidence. Notably, in Commonwealth v. Cross, 555 Pa. 603, 726 A.2d 333 (Pa.1999), two concurring Justices of the Pennsylvania Supreme Court opined that the jury instruction in Frey, which mirrors the Banks and Hackett instruction, "contains a degree of imprecision that can be avoided merely by employing Pennsylvania Suggested Standard Criminal Jury Instruction 15.2502H(3) [currently 15.2502H(2) ], which removes any doubt concerning a juror's role in assessing mitigating circumstances." Id. at 338-39. These Justices noted that they "would affirmatively require Pennsylvania trial courts to instruct capital sentencing juries in accordance with the standard instruction."

196
Pennsylvania's well-intended effort to clarify its sentencing procedure does not in itself indicate that its former instructions and verdict slip were constitutionally infirm. Nevertheless, the above-noted revisions, as well as the views expressed by the concurring Pennsylvania Justices in Cross, lend support to the conclusion that an instruction on unanimity that merely tracks the language of 42 Pa. Cons.Stat. § 9711(c)(1)(iv) is imprecise and subject to an impermissible risk of jury misinterpretation on whether unanimity is required to consider mitigating evidence. Moreover, these revisions further support the view that there was insufficient clarity in the instructions and verdict slip at Hackett's trial to permit this Court to uphold his sentence of death on the sole ground that the jury found "no mitigating circumstance." At the very least, my colleagues in the majority should find themselves in agreement with the following observation from Mills:

197
The decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make. Evolving standards of societal decency have imposed a correspondingly high requirement of reliability on the determination that death is the appropriate penalty in a particular case. The possibility that [Hackett]'s jury conducted its task improperly certainly is great enough to require resentencing.

198
Mills, 486 U.S. at 383-84, 108 S.Ct. 1860.

III.

199
For these reasons, I conclude that Hackett has established a Mills error, and that the state court's rejection of this claim resulted in an unreasonable application of clearly established federal law. I therefore would affirm the District Court's order vacating Hackett's sentence and allow Pennsylvania to resentence him to life imprisonment or conduct a new capital sentencing proceeding.

Notes:

16
As the majority notes, our decision inBanks to grant relief under Mills is no longer precedential given the Supreme Court's holding in Beard v. Banks, ___ U.S. ___, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004), that the Mills rule is barred under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), from retroactive application. See Maj. Op. at 295 n. 9. Hackett's conviction became final after Mills was decided, and thus there is no Teague problem here. The majority correctly observes that our discussion in Banks regarding the Mills issue, although not precedential, is nevertheless "instructive and relevant to our current inquiry," Maj. Op. at 295 n. 9, particularly given that the analysis in Banks reflects the unanimous judgment of three members of this Court in granting relief on a Mills issue that is, I submit, indistinguishable from the one presented here. It also bears mention that Justice Stevens, joined by Justices Souter, Ginsburg, and Breyer, filed a dissent in Beard v. Banks in which he noted that the four dissenters would have affirmed the grant of habeas relief on the Mills question in Banks "[f]or the reasons identified by the Third Circuit[.]" ___ U.S. at ___, 124 S.Ct. at 2517 (Stevens, J., dissenting).

17
I do not concede, however, that the Pennsylvania Supreme Court's decision is necessarily immune from analysis under the "contrary to" test, or that its decision would survive such scrutiny. As Justice O'Connor explained for the majority inWilliams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." 529 U.S. at 405, 120 S.Ct. 1495, Justice O'Connor offered the following example of a "contrary to" application of federal law:
Take, for example, our decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a "reasonable probability that ... the result of the proceeding would have been different." Id., at 694, 104 S.Ct. 2052.
Williams, 529 U.S. at 405-06, 120 S.Ct. 1495.
A similar flaw can be found in the state court analysis here. The Pennsylvania Supreme Court cited Mills and purported to analyze Hackett's claim under the Mills rule, but the court failed to consider, as is required by Mills and Boyde, whether the jury likely interpreted its instructions and verdict slip in a manner that prevented its consideration of relevant mitigating evidence. The state court instead reasoned that, because the instructions mirrored the language of 42 Pa. Cons. Stat. § 9711(c)(1)(iv), and because it had previously held that statute constitutional by finding that it does not expressly permit a single juror who refuses to agree that mitigation exists to force a death verdict on the other jurors, there can be no Mills violation. See Commonwealth v. Hackett, 534 Pa. 210, 627 A.2d 719, 725 (1993). This analysis employed a rule (i.e., no Mills violation if the challenged instructions can be read in a constitutional manner) that did not comport with the governing rule set forth in Mills and Boyde (i.e., whether there is a reasonable likelihood that the jury applied the challenged instructions in a way that prevented consideration of mitigating evidence). In Mills itself, the state court interpreted its statute as constitutional, but the Supreme Court vacated the state court decision because there was a substantial risk that the jury did not understand that it could consider mitigating evidence absent unanimous agreement. Mills, 486 U.S. at 371, 384, 108 S.Ct. 1860.
The majority finds that the state court "applied Mills, but did not apply Boyde," and therefore the state court's analysis was merely "incomplete" but not necessarily contrary to Supreme Court precedent. See Maj. Op. at 300. The majority fails to acknowledge, however, that the Pennsylvania Supreme Court never applied Mills in the sense that it failed to identify the correct rule from Mills, not to mention its failure to apply the Boyde standard. Thus, as in Justice O'Connor's example involving a misapprehension of the Strickland rule, the state court's decision arguably fits the mold of "contrary to" federal law. Cf. Bell v. Cone, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) ("We hold, therefore, that the state court correctly identified the principles announced in Strickland as those governing the analysis of respondent's claim. Consequently, we find no merit in respondent's contention that the state court's adjudication was contrary to our clearly established law."). Moreover, Hackett can show not only that the state court failed to apply the correct Mills rule, but that he is entitled to relief under a correct application of Mills and Boyde. Thus, although I would agree with the majority that "[i]f the Pennsylvania Supreme Court denied Hackett relief under Mills, it logically would have done the same if applying Boyde," Maj. Op. at 300, the Pennsylvania Supreme Court's failure to apply Mills correctly precludes an inference that it also would have denied relief under the Boyde standard.
In the final analysis, however, this case may fall in the overlap between the "contrary to" and "unreasonable application of" standards, given that the state court assessed and sought to distinguish Hackett's claim by analogy to Mills, despite its failure to conduct a proper Mills inquiry. See Moore v. Morton, 255 F.3d 95, 104 (3d Cir.2001) (noting that "[i]n Williams v. Taylor, 529 U.S. 362, 404-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that `contrary to' and `unreasonable application of' have independent, if overlapping meanings."). I see no need to explore this "overlap" here. In Banks, we held that the Pennsylvania Supreme Court rendered an unreasonable application of federal law on indistinguishable instructions, and we opted not to analyze the claim under the "contrary to" test. Banks, 271 F.3d at 545 n. 21. Because I believe the same approach can be taken here, there is little need to engage in a separate contrary to analysis for Hackett's claim. Moreover, the majority denies relief to Hackett primarily by finding that the state court's decision survives the unreasonable application test. Thus, I too focus upon the unreasonableness standard.

18
The Commonwealth's only argument in this regard is thatBanks was wrongly decided on the Mills question, as it contends that Banks "did not apply the correct evaluative inquiry under Boyde, but rather, consistently and improperly employed possibility-based, and single-juror based, standards of evaluation that Boyde explicitly rejected." Appellant's Br. at 51. The Commonwealth levels a similar charge against Frey. Appellant's Br. at 56-58, 61-62. However, a close review of Banks and Frey shows that this Court did not misapply the Boyde standard. The Court was careful in Frey to note the difference between Mills and Boyde, and we held, in accordance with Boyde, that "it was reasonably likely that the jury could have believed that it was required to find the existence of mitigating circumstances unanimously...." Frey, 132 F.3d at 924. Likewise, we held in Banks that, "[c]onsidered as a whole, the jury instructions leave no doubt `there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence.'" Banks, 271 F.3d at 549 (quoting Boyde, 494 U.S. at 380, 110 S.Ct. 1190).

19

When voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular mitigating circumstance as present despite what other jurors may believe.
PA. SUGGESTED STANDARD CRIMINAL JURY INSTRUCTIONS No. 15.2502H(2) (2000).